IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ERICA L.,**[1]

                Plaintiff,          Civ. No. 1:18-cv-00297-MC

                                    **OPINION AND ORDER**

**NANCY A. BERRYHILL**, Acting
Commissioner of Social Security

                Defendant.
_____

**MCSHANE, Judge:**

      Plaintiff Erica L. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the reasons below, the Commissioner's final decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

Plaintiff was 31 years old on her alleged onset date of September 29, 2010. Tr. 19, 76, 88.[2] She completed high school and some college coursework. Tr. 27, 44, 222. She alleged disability due to autism spectrum disorder, persistent depressive disorder, and generalized anxiety disorder. Tr. 221.

Plaintiff filed her DIB and SSI applications on August 13, 2014. Tr. 198, 202. Her claims were denied initially and upon reconsideration. Tr. 74–75. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and appeared for a hearing on October 14, 2016. Tr. 38–73, 150. In a written decision, the ALJ denied Plaintiff's applications on December 22, 2016. Tr. 19–33. The Appeals Council denied Plaintiff's subsequent request for review, rendering the ALJ's decision final. Tr. 1–6. This appeal followed.

## **STANDARD OF REVIEW**

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

---

[2]"Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 7, provided by the Commissioner.

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests upon the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id*. If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

The ALJ performed the sequential evaluation. At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since September 29, 2010, the alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff had the following severe impairments: asthma, autism spectrum disorder, general anxiety disorder, major depressive disorder, and posttraumatic stress disorder ("PTSD"). *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listings. Tr. 23; 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed her to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [She] must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. She [was] limited to understanding and carrying out simple instructions. She [was] limited to no contact with the general public and no more than

occasional contact with coworkers and supervisors.

Tr. 25. At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. Tr. 31. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy such that Plaintiff could sustain substantial gainful employment despite her impairments. Tr. 31–32. Specifically, the ALJ found Plaintiff could perform the occupations of routing clerk, electronics worker, and photocopying machine operator. Tr. 32. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 32–33.

Plaintiff contends the ALJ erred by: (1) failing to provide clear and convincing reasons to reject her subjective symptom testimony; and (2) failing to properly weigh the lay opinion evidence.

**I.      Subjective Symptom Testimony**

Plaintiff asserts the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony. An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). In assessing credibility, the ALJ "may consider a range of factors." *Ghanim*, 763 F.3d at 1163. These factors include:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). An ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the hearing, Plaintiff testified that she left her longest her job as leasing agent after three years due to what the "autism community . . . call[s] . . . a shutdown," which she explained occurs when a person feels "overwhelmed." Tr. 51. She testified that she had history of "meltdowns," ultimately culminating in her autism diagnosis at age thirty. Tr. 52–53. She explained the meltdowns result from "overstimulation" and that she is "particularly sensitive to light, sound, and smell." Tr. 52. For example, she described an instance of an "extremely strong perfume" causing her "to go home sick for the rest of the day." *Id.*

Plaintiff testified that the medication she takes for her anxiety and depression "works" to help control her symptoms, but that she still has suicidal ideations. Tr. 59–60. She further explained that she also has anxiety when she goes to "a new place or [when] meeting a new person, but generally [her] anxiety comes from overstimulation and sensory sensitivity." Tr. 60–61. She testified that she has "small panic attacks everyday pretty much," and that "decision-making" gives her anxiety. Tr. 61.

She testified that she has many "new hobbies," which include gardening, painting, grocery shopping for her household, volunteering at a food bank and with a "homeless coalition project" where she assists with "the technical aspects of . . . writing and researching." Tr. 62. However, she testified that she does not have a "set schedule." *Id.*[3]

---

[3] At the hearing, Plaintiff also testified about physical impairments, such as her use of an inhaler for her asthma. Tr. 63. Because Plaintiff's briefing does not explicitly challenge the ALJ's evaluation of those symptoms, however, I decline to discuss them further.

The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." Tr. 26. Plaintiff argues that the ALJ's reasoning does not satisfy the clear-and-convincing standard because the ALJ's reasoning is not supported by substantial evidence and fails to adequately account for her actual impairments. Pl.'s Op. Br. 11–18. The Commissioner responds the ALJ properly rejected Plaintiff's testimony because her alleged limitations were inconsistent with (1) the treatment record; (2) her activities; and (3) objective findings. Def.'s Br. 3–10.

As a threshold matter, Plaintiff asserts that the ALJ erred in concluding "the longitudinal evidence of record support[ed] a finding that [Plaintiff was as] limited as contained in [the] decision's residual functional capacity, but not as limited as she allege[d]." Pl.'s Op. Br. 14 (citing Tr. 26). Plaintiff relies on *Laborin v. Berryhill* in support of her assertion. 867 F.3d 1151, 1154 (9th Cir. 2017). *Laborin* rejected an ALJ's reliance on "boilerplate language" that discredited a claimant's subjective symptom testimony to the extent the testimony was inconsistent with the RFC the ALJ had assessed. *Laborin*, 867 F.3d at 1154 ("By discrediting a claimant's statements concerning the intensity, persistence and limiting effects of [the claimant's] symptoms . . . to the extent they are inconsistent with the RFC, the ALJ puts the cart before the horse.") (bracketing and ellipsis in original; quotation marks deleted). Read in a vacuum, Plaintiff's reliance on the reasoning in *Laborin* has some appeal. Had the ALJ's decision contained no additional discussion of Plaintiff's testimony, that reasoning would likely have proved "problematic." *Id.* Here, however, the statement came as the opening sentence of detailed and cogent discussion of the evidence the ALJ relied on in assessing Plaintiff's subjective symptom testimony that spanned multiple pages.

Thus, as *Laborin* explicitly contemplated, the "inclusion of this flawed boilerplate language is not, by itself, reversible error and can be harmless" where the ALJ otherwise appropriately analyzes the evidence. *See Laborin*, 867 F.3d at 1154–55. Accordingly, for the reasons discussed below, because the ALJ appropriately analyzed Plaintiff's subjective symptom testimony, any error in the ALJ's use of less than model language was harmless.

The ALJ supplied clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. For example, the ALJ cited evidence that Plaintiff's symptoms improved with treatment. *See, e.g.*, Tr. 28 (citing Tr. 368 (reporting Vistaril "helping a lot"); *id.* (citing Tr. 430 (reporting "very positive response" to Fluxetine with improved mood and functioning as well as improved motivation, appetite, energy, and concentration). An ALJ may discount a claimant's testimony based on a positive response to treatment. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) [4]; *see also Plunk v. Astrue*, No. 6:11-cv-06286-SI, 2013 WL 1412942, at *7 (D. Or. Apr. 8, 2013) (affirming ALJ's subjective symptom evaluation where the ALJ cited medical records that the claimant's "symptoms improved with treatment"). This was a clear and convincing reason to discount Plaintiff's testimony.

Plaintiff concedes her mental health symptoms improved with medication, but she asserts that autism is her most disabling impairment and that there is no cure. Pl.'s Op. Br. 15. Therefore, she argues, the fact her mental health symptoms improved does not justify discounting her autism-related limitations. Pl.'s Op. Br. 15 (citing *What are the Causes and is There a 'Cure'?*, National Autistic Society, https://www.autism.org.uk/about/what-is/causes.aspx (last visited September 21,

---

[4] The Court notes that effective March 27, 2017, the Commissioner has promulgated new regulations that modifies the evaluation of subjective symptom testimony. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, *available at* 2017 WL 168819 at *5871, *5882 (January 18, 2017) (revising "How we evaluate symptoms, including pain."). Those revisions, however, do not apply in this appeal. *See Michael S. v. Berryhill*, No. 6:17-cv-01315-MC, 2019 WL 1062368, at *3 (D. Or. Mar. 6, 2019).

2019)). As the Commissioner correctly notes, however, the ALJ did not conclude Plaintiff's autism had abated entirely. Def.'s Br. 10. Rather, the ALJ relied on the neuropsychological evaluation conducted by Paul E. Guastadisegni, Ph.D., wherein the doctor determined that Plaintiff would benefit from treating her "anxiety and underlying depression," *and* treatment notes that showed Plaintiff's mental health impairments did in fact improve. Tr. 27–28 (citing 356–366); *see also* Tr. 366 (confirming autism diagnosis and noting that Plaintiff "has considerable issues related to anxiety and underlying depression, which need to be addressed" and that she would "be much more functional if she treats her anxiety and depression with both medication (for her mood disorder) and cognitive behavioral therapy"). This is precisely the type of ambiguity ALJs are specifically charged with resolving. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (explaining that "ALJ is responsible for determining credibility . . . and for resolving ambiguities"). Although Plaintiff may prefer an alternative interpretation of the record, the ALJ's conclusion was rational and therefore may not be disturbed. *See Batson,* 359 F.3d at 1198.

The ALJ also cited two additional clear and convincing reasons to discount Plaintiff's testimony. First, the ALJ cited activities that were inconsistent with Plaintiff's alleged limitations. An ALJ may use activities of daily living to discredit a claimant's testimony where (1) the activities meet the threshold for transferable work skills or (2) the activities contradict the claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).[5] For example, although Plaintiff alleged she had social anxiety, the ALJ cited reports that Plaintiff volunteered at food banks, served as a mentor to a young man with autism, and regularly visited the beach. *See* Tr. 23–24, 26, 28, 421, 425. Although Plaintiff advances an alternative interpretation of the record, as the Ninth

---

[5] Plaintiff asserts the ALJ invoked transferability as her grounds for discounting Plaintiff's testimony and was therefore required to explain how those activities transferred to a work setting. I do not read the ALJ's decision so narrowly as the ALJ also listed activities that were inconsistent with Plaintiff's described limitations.

Circuits has instructed: "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson,* 359 F.3d at 1198.

Second, the ALJ also highlighted objective evidence that was inconsistent with Plaintiff's allegations. *See* Tr. 27 (citing Tr. 350, 357–66, 375, 377–79, 430). Although an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence," *Bunnel v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991) (en banc), a lack of objective medical evidence can form a proper basis for discounting subjective symptom testimony when coupled, as here, with other permissible rationales for discounting a claimant's testimony, *see Thomas,* 278 F.3d at 958–59 (upholding ALJ credibility determination based on lack of "objective medical evidence," the claimant's "poor work history," and the claimant's ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping").

In sum, the ALJ provided sufficient clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II. Lay Evidence

### A. "Other Source" Medical Opinion

Plaintiff asserts that the ALJ improperly discounted the opinion testimony of qualified mental health professional Merna Peterson. Pl.'s Op. Br. 6–11.

In effect at the time Plaintiff filed her claim, SSR 06-03p defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL 2329939, at *1 (August 9, 2006).[6] Health care providers who are not "acceptable medical sources," are still

---

[6] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR 06-03p, broadened the definition of acceptable medical sources, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. 20 C.F.R. §§ 404.1502, 416.902; 82 Fed.Reg. 5844-01, *available at* 2017 WL 168819, at *5863, *5873 (Jan. 18, 2017); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017)

considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (effective September 3, 2013 to March 26, 2017). An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject such evidence, an ALJ must provide germane reasons for doing so. *Adams v. Colvin*, No. 3:13-cv-01969-MC, 2015 WL 852831, at *2 (D. Or. Feb. 26, 2015) (citing *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007)), *aff'd sub nom.*, 725 F. App'x 541 (9th Cir. 2018).

Ms. Peterson completed a questionnaire, supplied by Plaintiff's counsel, in which she opined that Plaintiff: could not work with the public due to problems with social cues and over stimulation; had difficulty working with others and responding to supervisors due to autism; and was unable to sustain the stress related to employment. Tr. 457. Further, Ms. Peterson concluded that Plaintiff had various marked limitations in understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Tr. 460–63.

The ALJ assigned little weight to Ms. Peterson's opinion for two reasons. Tr. 30. First, the ALJ noted that Ms. Peterson was "not an acceptable medical source[.]" *Id.* Second, the ALJ highlighted that the opinion was inconsistent with Ms. Peterson's treatment recommendation that Plaintiff find gainful employment and maintain it for six months as well as Ms. Peterson's description of Plaintiff's "strengths." *Id.*

The ALJ's first rationale was not a sufficiently germane reason to reject Ms. Peterson's opinion. *See Persons v. Astrue,* No. 3:11-cv-00782-MO, 2012 WL 3264553, at *6 (D. Or. Aug. 7,

---

(as amended) (noting that the prior version of the "Social Security regulations provide an outdated view that consider a nurse practitioner as an 'other source'"). Those revisions, however, do not apply in this appeal. *Michael S.*, 2019 WL 1062368, at *3.

2012) (holding an ALJ may not reject lay witness simply because they were "not [an] acceptable medical sources") (citing *Bruce,* 557 F.3d at 1116).

The parties vehemently disagree whether the ALJ's assertion that Ms. Peterson's "recommend[ation] that [Plaintiff] find gainful and maintain it for six months" constituted a permissible reason to discount Ms. Peterson's opinion. I decline to resolve the largely semantical dispute, however, because the alternative inconsistency identified by the ALJ was a sufficiently germane reason to discount Ms. Peterson's opinion. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1115, at 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting evidence is harmless where an ALJ's "remaining reasoning and ultimate [evaluation of the evidence was] adequately supported by substantial evidence in the record").

In March 2015, Ms. Peterson listed Plaintiff's "strengths" as, *inter alia*, "Able to Live Independently, . . . Interested in Hobbies, Able to Care for Self/Others, Good Verbal/Intellectual Abilities, [and] Able to Manage Finances[.]" Tr, 452. Just over a year later, Ms. Peterson described Plaintiff as having identical strengths and added that she had also become "Involved in the Community." Tr. 444. Those descriptions of Plaintiff's abilities, however, are inconsistent with several of the marked limitations described in Ms. Peterson's mental residual functional capacity questionnaire. For example, Ms. Peterson's description of Plaintiff's "Good Verbal/Intellectual Abilities" is inconsistent with her opinion that Plaintiff was precluded from understating and remembering even "very short and simple instructions." Tr. 460; *see also* Tr. 459 (describing a marked limitation, for purposes of the questionnaire, as a "limitation which *precludes* the ability to perform the designated activity regular and sustained basis") (emphasis added). Such an inconsistency is a sufficiently germane reason to discount Ms. Peterson's opinion. *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005) (citing inconsistency with medical evidence as a

germane reason to reject lay testimony); *O'Connor v. Colvin*, No. 6:12-cv-01396-MC, 2013 WL 4432138, at *3 (D. Or. Aug. 14, 2013) (ALJ provided germane reasons to reject "questionnaire" that conflicted with "medical evidence in the record"); *see also* Tr. 364 (neuropsychological evaluation doctor concluding that although Plaintiff "had some selective processing problems," she had "an IQ in the average to high average range" and that "cognitive testing did not reveal major deficits"). The ALJ is affirmed as to this issue.

### B. Lay Witness Statement

Plaintiff asserts that the ALJ improperly discounted the lay witness statement of Maurice H. Pl.'s Br. 18–20. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). "The ALJ may reject a third party's testimony upon giving a reason germane to that witness." *Parra*, 481 F.3d at 750 (citation omitted).

Maurice H., Plaintiff's fiancé, completed a third-party statement on behalf of Plaintiff's disability claim. He wrote that Plaintiff's "autism limit[ed] her ability to work because of stress overloads, anxiety, [she was] not able to be in social events," and it was "extremely difficult for her to participate in society." Tr. 252. Maurice H. further wrote that Plaintiff's impairments affected her memory, concentration, understanding, and ability to complete tasks.

The ALJ gave multiple reasons for assigning the third-party statement little weight, at least two of which were sufficiently germane reasons for discounting the statement. First, the ALJ found the statement was internally inconsistent. Tr. 30. An internal inconsistency is a germane reason to discount lay witness testimony. *Rayment v. Berryhill*, 741 F. App'x 440, 441 (9th Cir. 2018) (citing *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ highlighted

that although Maurice H. wrote that Plaintiff was "unable to work due to her mental impairments," he also listed activities Plaintiff engaged in that required "concentration, persistence, and pace." Tr. 30. For example, Maurice H. wrote that Plaintiff's hobbies included daily painting, bi-weekly baking and rock collecting, as well as daily television watching and reading. Tr. 256; *see also* Tr. 234 (self-reporting that Plaintiff has "a hard time" stopping watching television, reading, and painting). Plaintiff argues the ALJ failed to identify specific activities in her decision. Pl.'s Op. Br. 19–20. I decline to review the ALJ's decision in a vacuum. *See Earl v. Colvin*, No. 6:12-cv-01306-SI, 2013 WL 5819107, at *8 (D. Or. Oct. 29, 2013) (affirming ALJ's rejection of lay witness testimony "[i]mmediately following the analysis of [of the claimant's subjective symptom testimony, where] the ALJ considered and rejected the similar testimony of lay witnesses"). And I find the ALJ identified sufficient internal inconstancies to discount the lay witness statement. *See Crider v. Comm'r of Soc. Sec.*, No. 2:16-cv-01809-AA, 2017 WL 4842380, at *5 (D. Or. Oct. 24, 2017) (finding internal inconsistency with lay witness who described limitations inconsistent with the daily activities the lay witness also described).

Second, the ALJ noted similarities between Maurice H.'s third-party statement and Plaintiff's function report. Where an ALJ has provided a clear and convincing reason for rejecting a claimant's subjective symptom testimony, she may also reject similar lay witness testimony. *See Valentine*, 574 F.3d at 694; *see also James B. v. Berryhill*, No. 6:17-cv-1888-SI, 2018 WL 5786218, at *10 (D. Or. Nov. 5, 2018) (holding the ALJ provided a sufficiently germane reason for rejecting lay testimony that "largely echoed" the claimant's allegations). The ALJ provided multiple germane reasons for rejecting the third-party witness statement of Maurice H.

In sum, the ALJ provided sufficiently germane reasons for rejecting the lay opinions of record.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 26th day of September 2019.

                                              s/Michael J. McShane
                                              MICHAEL J. MCSHANE
                                              United States District Judge